UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELTA T, LLC d/b/a
BIG ASS FAN COMPANY,

    Plaintiff,

v.                           Case No. 8:19-cv-1731-VMC-SPF

DAN'S FAN CITY, INC., and
TROPOSAIR, LLC,

    Defendants.
_____/

**ORDER**

This matter is before the Court upon consideration of Plaintiff Delta T, LLC's Daubert Motion to Disqualify Defendants' Expert Dr. Rene Befurt (Doc. # 164), filed on April 13, 2021. Defendants Dan's Fan City, Inc., and TroposAir, LLC, responded on April 27, 2021. (Doc. # 167). For the reasons set forth below, the Motion is granted in part and denied in part.

**I. Background**

This is a patent case that arose out of Defendants' alleged infringement of three of Delta T's patented designs of a modern residential ceiling fan. (Doc. # 65 at ¶¶ 8, 20). Delta T initiated this suit in the District of Maryland on December 14, 2018. (Doc. # 1). Following transfer to this

1

Court on July 17, 2019, the case proceeded through discovery. (Doc. # 30). The case is currently scheduled for trial during the June 2021 trial term. (Doc. # 99 at 3).

At trial, Defendants intend to rely upon Dr. Rene Befurt's expert opinion and testimony. (Doc. # 179-4 at 2). Dr. Befurt has a master's degree in business administration and a Ph.D. in business administration with a focus on marketing. (Doc. # 141-3 at ¶ 1). Dr. Befurt currently serves as the vice president of a "consulting firm [that] specializes in providing economic, financial, statistical, and strategy consulting to law firms, corporations, and government agencies." (Id.). Additionally, Dr. Befurt has experience in survey design. (Doc. # 164-1 at 16:21-23, 19:9-11).

Defendants engaged Dr. Befurt in this case to render an expert opinion in rebuttal to that of Delta T's expert, Charles Mauro. (Doc. # 141-3 at ¶ 9). Mr. Mauro "design[ed] . . . online survey[s] for a sample of randomly chosen participants to evaluate whether, 'in the eye of an ordinary observer giving such attention as a purchaser usually gives,' the ceiling fan depicted in Delta T's patents and Defendants' Vogue ceiling fan 'are substantially the same.'" (Doc. # 154 at 3 (citations omitted)). Dr. Befurt was tasked with opining on Mr. Mauro's surveys, "including their conceptual

2

background, details of the survey instruments and their administration, and ultimately the validity of the data, analyses, and survey results." (Doc. # 141-3 at ¶ 10). In his report, Dr. Befurt concludes that Mr. Mauro's surveys "suffer from significant, irreparable design flaws, ignore established survey practices and are prone to bias, and produce results that are unreliable." (Id. at ¶ 12).

In its Motion, Delta T seeks to exclude Dr. Befurt's expert opinion and testimony. (Doc. # 164). Defendants have responded (Doc. # 167), and the Motion is now ripe for review.

## II. Discussion

Federal Rule of Evidence 702, which governs the admission of expert testimony in federal courts, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that federal district courts must ensure that any and all scientific testimony or evidence admitted is both

3

relevant and reliable. Id. at 589-90. This analysis applies to non-scientific expert testimony as well. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999). District courts are tasked with this gatekeeping function so "that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (internal quotation marks and citation omitted).

In the Eleventh Circuit, trial courts must engage in a "rigorous three-part inquiry" in determining the admissibility of expert testimony. Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). Specifically, courts must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. (citation omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Adams v. Magical Cruise Co., No. 6:15-cv-282-RBD-TBS, 2016 WL 11577631, at *2 (M.D. Fla.

4

Oct. 21, 2016) (citing Rink, 400 F.3d at 1292). The Court will address each aspect of the three-part inquiry below.

**A. Dr. Befurt's Qualifications**

First, the Court must assess whether Dr. Befurt is qualified to testify about the matters he intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Civ. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome Inc., 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." Id. (citations omitted).

Here, Delta T does not dispute Dr. Befurt's qualifications regarding his survey design expertise. (Doc. # 164 at 3 ("Delta T is not challenging Dr. Befurt's qualifications as a survey designed as a *general* matter[.]")). However, Delta T does challenge Dr. Befurt's

5

qualifications to render an opinion on the particular type of survey in this case, which they dub the "eye of an ordinary observer test" survey. (Id.). Specifically, Delta T argues that Dr. Befurt is unqualified because he "has never testified as to design patent infringement," "has not formally studied industrial design," "has . . . never lectured on this subject," "has no practical working knowledge of the technology [(ceiling fans)] in question," "has never designed a survey or done an expert report in a design patent case," "has at best a very cursory understanding of design patent law," "has not even read the key case on design infringement setting out the [ordinary observer test]," his "work experience . . . does not qualify him to testify with respect to design patent infringement," "he did no survey work of his own in this case," and he "readily acknowledges no ordinary observer expertise." (Doc. # 164 at 3-7 (emphases omitted)). Defendants respond that "Dr. Befurt is amply qualified to testify as an expert in the formulation and administration of consumer surveys, including consumer surveys used in assessing intellectual property rights." (Doc. # 167 at 5).

The Court agrees with Defendants that Dr. Befurt need not be an expert on patent law, the ordinary observer test, patent-specific surveys, or ceiling fans, to render an

6

opinion on the adequacy of Mr. Mauro's survey design. See Bluetooth SIG, Inc. v. FCA US LLC, 468 F. Supp. 3d 1342, 1348-49 (W.D. Wash. 2020) (finding an expert qualified to testify "in the area of trademark litigation surveys" despite not being an expert in that field because he was a survey research professional, had a certificate in marketing analytics, and took graduate-level courses in survey research methods).

Dr. Befurt has extensive expertise in consumer research marketing, including by consulting "on the positioning of brands and product lines based on consumers' perceptions of prototypical[ity], object comparisons, and similarity judgments." (Doc. # 141-3 at ¶¶ 1-3). Dr. Befurt has "supervised and consulted on a number of projects[,] . . . including choice-based conjoint, market forecasting, and product positioning projects for Audi Germany, Daimler-Chrysler Germany, Swiss Postal Service, and Buehlergroup Switzerland." (Id. at ¶ 2). Dr. Befurt has taken a number of graduate-level courses on the topic of survey design methodologies and statistical analysis. (Doc. # 164-1 at 16:11-17:23 ("These are the classic courses that someone interested in market research takes. They're typically called introduction to survey design and then the main classes on survey design and market research, market research methods,

7

statistical testing.")). Dr. Befurt has himself designed a number of surveys. (Id. at 25:8-11). And, Dr. Befurt has published multiple articles on the topics of survey design methodology and product similarity. (Id. at 19:9-22:21; Doc. # 141-3 at 47-48).

Given Daubert's lenient standard, and noting Delta T's lack of objection to Dr. Befurt's qualifications as to survey design methodologies generally, the Court finds that Dr. Befurt's experience in consumer marketing research and survey design methodologies makes him "minimally qualified" to testify about the methodologies Mr. Mauro employed in creating and administering his three surveys. See Edmondson v. Caliente Resorts, LLC, No. 8:15-cv-2672-SDM-TBM, 2017 WL 10591833, at *10 (M.D. Fla. Aug. 31, 2017) (deeming a marketing research and survey evidence expert minimally qualified under Daubert despite his lack of focus in the particular area of law at issue in the case).

### B. Reliability of Dr. Befurt's Methodology

Next, the Court must determine whether Dr. Befurt's methodology is reliable. City of Tuscaloosa, 158 F.3d at 562. "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before

8

allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (emphasis omitted). There are four recognized, yet non-exhaustive factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (internal quotation marks and citation omitted). A district court may take other relevant factors into consideration as well. Id. "Although an opinion from a non-scientific expert should receive the same level of scrutiny as an opinion from an expert who is a scientist, some types of expert testimony will not naturally rely on anything akin to the scientific method, and thus should be evaluated by other principles pertinent to the particular area of expertise." Washington v. City of Waldo, No. 1:15-CV-73-MW-GRJ, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016) (citation omitted).

Delta T argues that Dr. Befurt's opinion is unreliable because it merely "'parrot[s]' what he was told by counsel as to the critical issue on which he challenge[s] Mr. Mauro's

9

surveys – whether pertinent prior art was disregarded." (Doc.# 164 at 9). Defendants respond that they do not seek to introduce Dr. Befurt's testimony for this purpose. (Doc. # 167 at 9 ("Dr. Befurt was not proffered, and will not be proffered, as an expert in regard to the prior art in this case.")). Rather, Dr. Befurt "will testify . . . to the importance of the choice of stimuli, in this case prior art references, in consumer surveys such as those conducted by Mr. Mauro and will testify that 'similarity comparisons such as [Mr. Mauro's] Paired Rating Scale Task are highly sensitive to the stimuli presented to survey respondents.'" (Id. (citation omitted)).

The Court finds that Dr. Befurt's methodology is sufficiently reliable with regard to these topics. In opining on the purported design flaws in Mr. Mauro's surveys, Dr. Befurt relied on his experience and expertise, Mr. Mauro's survey reports, and academic literature on the topic of survey designs, including on survey designs in the intellectual property sphere. (Doc. # 141-3 at 53; Doc. # 164-1 at 25:8-11, 86:1-6, 94:3-8). Delta T does not appear to attack the reliability of the literature or sources upon which Dr. Befurt relied. (Doc. # 164). This is sufficient for Daubert purposes. See Arevalo v. Coloplast Corp., No. 3:19-cv-3577-TKW-MJF,

2020 WL 3958505, at *6 (N.D. Fla. July 7, 2020) ("Along with his experience . . . and his review of internal documents, Dr. Garely relied on numerous published medical articles to form his device design opinion. Defendant did not criticize the reliability of the cited articles. The Court finds the scope of internal documents relied on by Dr. Garely did not render his methodology unreliable. Accordingly, the Court finds that his device design opinion is sufficient reliable.").

However, to the extent Dr. Befurt seeks to testify that Mr. Mauro's surveys are faulty because of the specific prior art included in the surveys or because they did not include certain prior art, Defendants have offered no reliable basis for such testimony. Dr. Befurt concedes that he himself conducted no research on the prior art in this case and has no specific background in determining what constitutes prior art. (Doc. # 164-1 at 13:8-24, 30:6-19, 36:25-38:20). Indeed, Dr. Befurt did not reach his own independent conclusions as to what prior art should have been used in Mr. Mauro's surveys. (Id.). Rather, Defendants' counsel merely told him that relevant prior art was excluded. (Id. at 43:23-44:15, 49:11-15, 52:7-13 ("Q. How did you determine whether or not Mr. Mauro looked at a complete set of prior art or not? A. I

11

didn't determine it myself. As I mentioned in a later paragraph – and I can find it – I inquired with counsel. . . . They told me that he used prior art as a consideration in his report and that there is more prior art out there.")); (Doc. # 141-3 at ¶ 19 ("I understand *from inquiries with counsel for Dan's Fan City* that Mr. Mauro does not use the correct prior art in his . . . [s]urveys – that is, he presents a reduced set of prior art examples and leaves out crucial prior art designs from his Paired Rating Scale Task." (emphasis added))). Dr. Befurt may not simply repeat counsel's opinion or analysis as to what prior art is relevant. See Morales v. Kraft Foods Grp., Inc., No. LA CV-14-04387 JAK (PJWx), 2017 WL 2598556, at *10 (C.D. Cal. June 9, 2017) ("An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence.").

Therefore, Dr. Befurt may not testify, as he concludes in his expert report, that Mr. Mauro's "surveys do not use the correct prior art – that is, he presents a reduced set of prior art examples and leaves out crucial prior art designs[.]" (Doc. # 141-3 at ¶ 12). Neither may he testify that Mr. Mauro's surveys are flawed because they specifically

fail to include prior art of the "Taiwanese Patent 352,920 and Chinese Patent 3,379,773." (Id. at ¶ 19).

Accordingly, the Motion is granted to the extent it seeks to exclude Dr. Befurt's expert opinion and testimony that relevant prior art was left out of Mr. Mauro's surveys. See Rodgers v. Beechcraft Corp., No. 15-CV-129-CVE-PJC, 2016 WL 7888002, at *8 (N.D. Okla. Oct. 27, 2016) ("Haider did no testing[.] . . . Instead, Haider largely adopted as his own a list of opinions provided by counsel and other experts. This is not proper."). However, Dr. Befurt's opinion about the importance of choice stimuli, order effects, target populations, control groups, randomization, pretests, and other considerations that generally go into survey design – including with regard to Mr. Mauro's surveys – is sufficiently reliable. (Doc. # 141-3 at ¶ 12).

**C.  Assistance to the Trier of Fact**

Finally, Dr. Befurt's testimony must assist the trier of fact. Fed. R. Evid. 702(a). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average [layperson]." Frazier, 387 F.3d at 1262. "[T]he court must 'ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing

party's case.'" Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

Because the Court has already excluded Dr. Befurt's testimony to the extent he seeks to opine that Mr. Mauro's survey omitted pertinent prior art, it considers only Dr. Befurt's remaining testimony. Delta T does not appear to argue that any of Dr. Befurt's other testimony would be unhelpful. (Doc. # 164 at 14-15). And, the Court finds that an expert's opinion of the methodologies Mr. Mauro utilized in creating his novel survey would assist the jury. See In re Trasylol Prods. Liab. Litig., No. 08-MD-01928, 2010 WL 1489793, at *7 (S.D. Fla. Feb. 24, 2010) ("Further, the opinion is not so fundamentally unsupported that it can offer no assistance to the jury."). Therefore, the Motion is denied to the extent it seeks to exclude the remainder of Dr. Befurt's opinion.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Delta T, LLC's Daubert Motion to Disqualify Defendant's Expert Dr. Rene Befurt (Doc. # 164) is **GRANTED** in part and **DENIED** in part.

(2) Dr. Befurt's expert opinion and testimony are excluded to the extent he opines that Mr. Mauro's surveys are faulty because of the specific prior art included in the surveys or because they did not include specific prior art. However, Dr. Befurt may testify as to survey design methodologies generally, as well as the other purported design flaws in Mr. Mauro's surveys.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of May, 2021.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE